William T. Enos (*pro hac vice* application pending)
Robert C. Nissen (*pro hac vice* application pending)
OBLON, SPIVAK, McCLELLAND,
    MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, Virginia  22314
Telephone:  (703) 413-3000
Facsimile:  (703) 413-2220
rnissen@oblon.com
wenos@oblon.com

Jeffrey D. Wexler, State Bar No. 132256
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
601 South Figueroa, Suite 3900
Los Angeles, California 90017
Telephone: (213) 892-4992
Facsimile: (213) 892.7731
jwexler@luce.com

Attorneys for Defendant
ECORE International Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| U.S. RUBBER RECYCLING, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>ECORE INTERNATIONAL INC., a Pennsylvania corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV 09-9516 SJO (OPx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT ECORE INTERNATIONAL, INC.: (1) TO DISMISS CLAIMS 1, 2, 3 AND 8 FOR LACK OF SUBJECT MATTER JURISDICTION [Fed. R. Civ. P. 12(b)(1)]; (2) TO DISMISS CLAIMS 1 AND 3 THROUGH 8 FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [Fed. R. Civ. P. 12(b)(6)]; AND (3) TO STRIKE ALLEGATIONS RE RELIEF SOUGHT ON CLAIM 8 [Fed. R. Civ. P. 12(f)]**<br><br>Date:  May 3, 2010<br>Time:  10:00 a.m.<br>Place:  Courtroom 1 |

1

## **<u>TABLE OF CONTENTS</u>**

2    INTRODUCTION ...................................................................................................... 1

3    I.    CLAIMS TWO AND THREE SHOULD BE DISMISSED FOR LACK OF
           SUBJECT MATTER JURISDICTION ......................................................... 2

4
5    II.   CLAIMS 1 AND 3-8 SHOULD BE DISMISSED BECAUSE USR
           DID NOT PLEAD INEQUITABLE CONDUCT WITH
           PARTICULARITY ........................................................................................ 3

6
7    III.  THE COURT SHOULD DISMISS CLAIMS 1 AND 3-8 FOR THE
           FOLLOWING ADDITIONAL REASONS .................................................... 8

8         A. The Court Should Dismiss Claim 1 (the Antitrust Claim) ..................... 8

9             1. The Court's Lack of Declaratory Judgment Jurisdiction also Means
                 that It Lacks Jurisdiction to Hear the Antitrust Claim .......................... 8

10
11            2. USR Has Not Pled an Antitrust Injury ................................................. 9

12            3. The Complaint Fails to Plead Any Factual Basis for Its Conclusory
                 Allegations Regarding the Relevant Market and Market Power ....... 10

13
14                a. The Complaint Fails to Provide a Factual Basis for Its
                     Conclusory Allegations About the Relevant Market ................. 11

15                b. The Complaint Fails to Provide Any Factual Basis for Its
                     Conclusory Allegations Regarding Market Power ..................... 11

16        B. The Court Should Dismiss Claim 4 (the False Marking Claim) Because
             USR Has Failed to Provide a Sufficient Factual Basis to Support Its
17           Conclusory Allegations that ECORE Marked Its Products or that
             ECORE Intended to Deceive the Public ................................................ 13
18
19        C. The Court Should Dismiss Claim 5 Because 1) USR's Allegation that
             ECORE Listed Its Product as Being Covered by the Patent-at-Issue Is
20           Not Actionable Under the Lanham Act, and 2) USR Has Failed to
             Provide a Factual Basis to Support Its Conclusory Allegations that
21           the Alleged False Statements Were Material ........................................ 15

22        D. The Court Should Dismiss Claims 6 and 7 (Interference with Business
             Relationships Claims) Because USR Has Failed to Plead a Sufficient
23           Factual Basis to Support Its Conclusory Allegations that ECORE
             Knew of USR's Alleged Business Relationships .................................. 17
24
25        E. Because USR Has Not Stated a Claim for Restitution, the Court Should
             Dismiss Claim 8 and Should Strike Its Request for Damages and Should
             Also Strike Its Request for Attorney's Fees Because USR Is Not
26           Acting as a Private Attorney General ................................................... 18

27    CONCLUSION        ................................................................................................ 20

28

i

1

## TABLE OF AUTHORITIES

Page

2    **Cases**

3    *Advanced Magnetic Closure, Inc. v. Rome Fastener Corp.,*
     2005 U.S. Dist. LEXIS 10016 (S.D.N.Y. May 11, 2005)...............................15, 16

4
     *Advanced Micro Devices, Inc. v. National Semiconductor Corp.,*
5    38 F. Supp. 2d 802 (N.D. Cal. 1999)..................................................19, 20

6    *Americopters, LLC v. FAA,*
     441 F.3d 726 (9th Cir. 2006) ......................................................................2

7
     *Apple Inc. v. Psystar Corp.,*
8    586 F. Supp. 2d 1190 (N.D. Cal. 2008)........................................................20

9    *Applera Corp. v. Mich. Diagnostics, LLC,*
     594 F. Supp. 2d 150 (D. Mass. 2009).........................................................17

10
     *Bell Atl. Corp. v. Twombly,*
11   550 U.S. 544 (2007)..................................................................passim

12   *Benitec Austl., Ltd. v. Nucleonics, Inc.,*
     495 F.3d 1340 (Fed. Cir. 2007) ..................................................................2

13
     *Berson v. Applied Signal Technology, Inc.,*
14   527 F.3d 982 (9th Cir. 2008) ...................................................................14

15   *Brown Shoe Co. v. United States,*
     370 U.S. 294 (1962)................................................................................9

16
     *Buckland v. Threshold Enter., Ltd.,*
17   155 Cal. App. 4th 798 (2007) ..................................................................19

18   *Chavez v. Whirlpool Corp.,*
     93 Cal. App. 4th 363 (2001) ....................................................................20

19
     *Citizens of Humanity, LLC v. Costco Wholesale Corp.,*
20   171 Cal. App. 4th 1 (2009) ......................................................................19

21   *Concord v. Boston Edison Co.,*
     915 F.2d 17 (1st Cir. 1990)......................................................................10

22
     *Correct Craft IP Holdings v. Malibu Boats,*
23   2010 U.S. Dist. LEXIS 13577 (M.D. Fla. Feb. 17, 2010)....................................6

24   *Cygnus Therapeutic Sys. V. ALZA Corp.,*
     92 F.3d 1153 (Fed. Cir. 1996) ....................................................................8

25
     *Eichman v. Fotomat Corp.,*
26   880 F.2d 149 (9th Cir. 1989) .................................................................9, 10

27   *Exergen Corp. v. Wal-Mart Stores, Inc.,*
     575 F.3d 1312 (Fed. Cir. 2009) ...............................................................4, 5

28

ii

## TABLE OF AUTHORITIES
### (cont'd)

**Page**

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) ................................................................. 9

*Golden Gate Pharm. Servs. v. Pfizer, Inc.*,
   2009 U.S. Dist. LEXIS 111862 (N.D. Cal. Dec. 2, 2009) ..................... 11

*HyLoft, Inc. v. Jiangsu Sainty Shengtong Imp. & Exp. Co., Ltd.*,
   2008 U.S. Dist. LEXIS 109631 (C.D. Cal. Sept. 8, 2008) ...................... 3

*IMCS, Inc. v. D.P. Tech. Corp.*,
   264 F. Supp. 2d 193 (E.D. Pa. 2003) ............................................... 14-16

*In re Netflix Antitrust Litig.*,
   506 F. Supp. 2d 308 (N.D. Cal. 2007) .................................................... 8

*In re Rubber Chems. Antitrust Litig.*,
   2008 U.S. Dist. LEXIS 98393 (N.D. Cal. Dec. 4, 2008) ...................... 10

*Inventorprise, Inc. v. Target Corp.*,
   2009 U.S. Dist. LEXIS 102852 (N.D.N.Y Nov. 2, 2009) ....................... 7

*ISCO Int'l, Inc. v. Conductus, Inc.*,
   279 F. Supp. 2d 489 (D. Del. 2003) ....................................................... 7

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................ 16

*Juniper Networks v. Shipley*,
   2009 U.S. Dist. LEXIS 40978 (N.D. Cal. May 13, 2009) .............. 7, 13, 14

*Kaiser Found. v. Abbott Labs.*,
   2009 U.S. Dist. LEXIS 107512 (C.D. Cal. Oct. 8, 2009) ....................... 6

*Kaufman & Broad-South Bay v. Unisys Corp.*,
   822 F. Supp. 1468 (N.D. Cal. 1993) ..................................................... 20

*Kearns v. Ford Motor Corp.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................ 7

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
   2008 U.S. Dist. LEXIS 68559 (N.D. Cal. Mar. 11, 2008) ................. 9, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................ 18

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,
   271 F.3d 825 (9th Cir. 2001) ................................................................ 17

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*,
   2008 U.S. Dist. LEXIS 47428 (D. Haw. June 16, 2008) .................... 9, 18

1
<u>**TABLE OF AUTHORITIES**</u>
<u>**(cont'd)**</u>
2
<u>**Page**</u>

3
*MedImmune, Inc. v. Genentech, Inc.,*
  549 U.S. 118 (2007)............................................................................3
4
*MedImmune, Inc. v. Genentech, Inc.,*
5
  535 F. Supp. 2d 1000 (C.D. Cal. 2008) ............................................3
6
*MyStateUSA, Inc. v. Roam Secure, Inc.,*
  2009 U.S. Dist. LEXIS 96680 (D. Idaho Oct. 16, 2009) ...............3
7
*National Collegiate Athletic Ass'n v. Board of Regents,*
8
  468 U.S. 85 (1984)............................................................................9
9
*Newcal Indus. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ........................................................11
10
*Nobelpharma AB v. Implant Innovations, Inc.,*
11
  141 F.3d 1059 (Fed. Cir. 1998) ........................................................6
12
*Noble Fiver Techs., LLC v. Argentum Med., LLC,*
  2006 U.S. Dist. LEXIS 43357 (M.D. Pa. June 27, 2006) ...............7
13
*NYNEX Corp. v. Discon, Inc.,*
14
  525 U.S. 128 (1998)..........................................................................9
15
*Pom Wonderful LLC v. Welch Foods, Inc.,*
  2009 WL 5184422 (C.D. Cal. Dec. 21, 2009)................................19
16
*Pro-Mold v. Great Lakes Plastics,*
17
  75 F.3d 1568 (Fed. Cir. 1996) ........................................................15
18
*Rebel Oil Co. v. Atlantic Richfield Co.,*
  51 F.3d 1421 (9th Cir. 1995) ..........................................................12
19
*Robert Bosch LLC v. Pylon Mfg. Corp.,*
20
  2009 U.S. Dist. LEXIS 97852 (D. Del. Oct. 19, 2009)...................6
21
*Shabaz v. Polo Ralph Lauren Corp.,*
  586 F. Supp. 2d 1205, 1208 (C.D. Cal. 2008) ...............................19
22
*SmileCare Dental Group v. Delta Dental Plan,*
23
  88 F.3d 780 (9th Cir. 1996) ............................................................11
24
*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ..........................................................13
25
*Teragren, LLC v. Smith & Fong Co.,*
26
  2008 U.S. Dist. LEXIS 36968 (W.D. Wash. Mar. 17, 2008)........16
27
*United States v. E.I. du Pont de Nemours & Co.,*
  351 U.S. 377 (1956)........................................................................11
28

## TABLE OF AUTHORITIES
### (cont'd)

**Page**

*Unitherm Food Sys. v. Swift-Eckrich, Inc.*,
 375 F.3d 1341 (Fed. Cir. 2004) ................................................................. 8

*Unocal Corp. v. United States*,
 222 F.3d 528 (9th Cir. 2000) ................................................................. 19

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
 382 U.S. 172, 176 (1965)........................................................................ 8

*Zenith Elecs. Corp. v. Exzec, Inc.*,
 182 F.3d 1340 (Fed. Cir. 1999) ................................................................ 7

**Statutes**

28 U.S.C. § 1367(c) .................................................................................. 18

Cal. Civ. Proc. Code § 1021.5 .................................................................. 19

**Rules**

Fed. R. Civ. P. 12(b)(1) and (6)............................................................. 1-3

Fed. R. Civ. P. 12(f)........................................................................ 1, 2, 19

**Other Authorities**

Areeda & Hovenkamp, Antitrust Law, ¶ 337d (2007) ............................. 9

Mikulka and Zuber, Exergen v. Wal-Mart: *Raising the Pleading Requirement
 for Inequitable Conduct*, LawUpdates.Com, Dec. 7, 2009 ................... 4, 5

1

**INTRODUCTION**

2   Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant ECORE

3   International, Inc. ("ECORE") respectfully moves to dismiss every claim of the

4   Complaint filed by plaintiff U.S. Rubber Recycling, Inc. ("USR") for lack of subject

5   matter jurisdiction or failure to state a claim.  In addition, pursuant to Rule 12(f),

6   ECORE moves to strike USR's request for damages and attorney's fees for claim 8.

7   Claims 1 through 3 should be dismissed for lack of subject matter jurisdiction

8   under Fed. R. Civ. P. 12(b)(1), as there is no actual case or controversy involving

9   those claims.  ECORE believes that there has never been an actual case or

10  controversy involving these claims.  At the very least, USR should have withdrawn

11  those claims after it received ECORE's covenant not to sue on February 4, 2010.

12  The Court should also dismiss claims 1 and 3-8 for failing to state a claim

13  upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because USR failed

14  to plead inequitable conduct and/or fraud with particularity for those claims.

15  Further, the Court should dismiss those claims because USR has not pled the

16  necessary "facts to state a claim to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

17  544, 570 (2007).  Instead, USR's Complaint only contains mere "labels and

18  conclusions."  *Id.* at 555.  For example, Claim 1 should be dismissed because USR

19  failed to allege any facts supporting its allegations of antitrust injury, the relevant

20  market and ECORE's alleged market power.  Claim 4 should be dismissed because

21  USR failed to allege any facts to support its allegation that ECORE marked its

22  products with the alleged fraudulently procured patent.  Further, this claim should

23  also be dismissed because USR has provided no facts to support its allegation that

24  ECORE intended to deceive the public.  In addition, both claims 4 and 5 should be

25  dismissed because listing your own patents on your own website is not actionable

26  under either statute.  Claim 5 should be dismissed because USR pled no facts to

27  support its allegations that ECORE's alleged false statements were material.  Claims

28  6 and 7 should be dismissed because USR pled no facts to support its allegations

1  that ECORE was aware of any of the alleged business relationships that USR claims

2  were interfered with.  Claim 8 should be dismissed because USR has not even pled a

3  conclusory allegation, let alone any facts, that it is entitled to "restitution."

4       Moreover, its request for damages and attorney's fees in claim 8 should be

5  stricken under Fed. R. Civ. P. 12(f) because it pled no facts to support its request for

6  restitution and is not eligible for attorney's fees under Section 1021.5, respectively.

7
   **I.   CLAIMS TWO AND THREE SHOULD BE DISMISSED FOR LACK
8        OF SUBJECT MATTER JURISDICTION**

9       The Court should dismiss claims 2 and 3 (the declaratory judgment claims)

10  for lack of subject matter jurisdiction.  There must be an actual controversy between

11  the parties for there to be subject matter jurisdiction.  Here, there is not.

12       "The burden is on the party claiming declaratory judgment jurisdiction to

13  establish that such jurisdiction existed at the time the claim for declaratory relief

14  was filed and that it has continued since." *Benitec Austl., Ltd. v. Nucleonics, Inc.*,

15  495 F.3d 1340, 1344 (Fed. Cir. 2007).  USR has not met this burden.  The total of

16  USR's allegations is that about two years ago and again about four months ago,

17  ECORE sent letters "***demanding*** that U.S. Rubber evaluate its … products … in

18  light of the claims of the '723 patent [and] ***demanded*** that U.S. Rubber respond if it

19  believes it does not infringe the '723 patent."  Complaint, ¶ 62 (emphasis added).

20  Those two letters contain no such demands.[1]  The alleged demand in the 2008 letter

21  is:  "Now that you are aware of the patent, you ***may wish*** to evaluate it with respect

22  to your [product.]"  Wexler Decl., Exh. A (emphasis added).  "May wish" is not a

23  "demand."  The 2009 letter "invite[d USR] to evaluate [the patent]."  *Id.,* Exh. B.

24  An "invitation" is also not a demand.  Thus, these letters merely invited inquiry

25

26  _____

[1]  Because the Court should dismiss these claims under Fed. R. Civ. P. 12(b)(1), it is
27  appropriate for the Court to consider these documents in deciding this motion.  *See
   Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) ("unlike a Rule
28  12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the
   facts contained in the four corners of the complaint").

regarding ECORE's patent. But a letter "merely inviting inquiry" is not sufficient to establish declaratory judgment jurisdiction. *MyStateUSA, Inc. v. Roam Secure, Inc.*, 2009 U.S. Dist. LEXIS 96680, *4 (D. Idaho Oct. 16, 2009).[2]

Nevertheless, in an attempt to resolve this matter amicably, on February 4, 2010, ECORE sent USR a written "covenant[] not to sue [USR] for infringement of [the '723 patent] now or in the future (including for any possible past damages, if any) for any products that US currently makes, uses, sells, offers for sale, or imports into the United States." Wexler Decl., Exh. C. Therefore, as stated in the remanded *MedImmune* case: "Under Federal Circuit precedent, a properly executed covenant not to sue for infringement … eliminates subject matter jurisdiction with respect to … declaratory claims for patent invalidity and unenforceability." *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008). Thus, once USR received ECORE's covenant not to sue, it was no longer even arguable that declaratory judgment jurisdiction existed. *Id.*; *accord HyLoft, Inc. v. Jiangsu Sainty Shengtong Imp. & Exp. Co., Ltd.*, 2008 U.S. Dist. LEXIS 109631, *2-*7 (C.D. Cal. Sept. 8, 2008) (finding no declaratory judgment jurisdiction once the patentee covenanted not to sue for all past and existing products). Consequently, the Court should dismiss these claims under Fed. R. Civ. P. 12(b)(1).

## II.   CLAIMS 1 AND 3-8 SHOULD BE DISMISSED BECAUSE USR DID NOT PLEAD INEQUITABLE CONDUCT WITH PARTICULARITY

The Court should also dismiss Claim 3 (the declaratory judgment claim for unenforceability) because USR has failed to plead inequitable conduct with particularity. In addition, the Court should dismiss Claims 1 (antitrust claim), 4 (False Patent Marking claim), 5 (Lanham Act claim), 6-7 (inference with business relationship claims), and 8 (17200 claim) because they are each based on the same defectively pled inequitable conduct alleged in claim 3.

---

[2] As the Supreme Court arguably made it easier to bring a declaratory judgment action in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), ECORE has limited its declaratory judgment analysis here to cases that post-date *MedImmune*.

3

1    The Federal Circuit has explained that a claim based on inequitable conduct

2  "requires identification of the specific who, what, when, where, and how of the

3  material misrepresentation or omission committed before the PTO." *Exergen Corp.*

4  *v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).  In addition, an

5  inequitable conduct claim requires that the plaintiff must "allege sufficient

6  underlying facts from which a court may reasonably infer that a party acted with the

7  requisite state of mind." *Id.*  USR's complaint does not meet the *Exergen* standard.

8    USR fails to properly plead the "who" component because USR only alleges

9  that "('Dodge's Representatives') intentionally failed to disclose to the Patent Office

10 material prior art references of which they were aware."  Complaint, ¶ 35.  USR

11 identifies "Dodge's Representatives" as being "DRI [a/k/a ECORE], Mr. Downey

12 and Mr. Dodge."  *Id.*  But USR fails to allege even one prior art reference actually

13 known to Mr. Downey or Mr. Dodge, or any other specific *individual*.  Instead,

14 USR only alleges that generic "Dodge Representatives," knew of these alleged prior

15 art references.  But, as *USR's own counsel* has written, "general allegations … fail[]

16 th[e *Exergen*] particularity requirement."  Mikulka and Zuber, Exergen v. Wal-

17 Mart*: Raising the Pleading Requirement for Inequitable Conduct*,

18 LawUpdates.Com, Dec. 7, 2009 (quoting *Exergen*) (Exh. 1).  Thus, as Ms. Mikulka

19 wrote, "the accused infringer must 'name the *specific individual* … who both knew

20 of the material information and deliberately withheld or misrepresented it."  *Id*.

21 (quoting *Exergen*, 575 F.3d at 1329, emphasis added).  Here, however, USR has

22 only made "general allegations" that "Dodge Representatives" knew of these alleged

23 prior art references and does not identify a "specific individual" who knew of a

24 specific reference and intentionally withheld that reference.  Consequently, USR's

25 pleading fails the *Exergen* standard and the Court should dismiss claim 3.

26    In addition, the Court should dismiss claim 3 because as regards the "*what*"

27 and "*where*" requirement, USR has failed to "identify which claims, and which

28 limitations in those claims, the withheld references are relevant to, and where in

4

those references the material information is found." *Exergen*, 575 F.3d at 1329.
Not only has USR failed to identify a specific limitation, but it has not even
identified a specific claim to which the withheld references are material. Nor has
USR alleged where in the allegedly withheld references there is anything that makes
any specific claim anticipated or obvious. Instead, USR's complaint merely states a
truism: "the examiner would not have allowed claims that were anticipated or made
obvious by the multitude of prior art products and publications," Complaint, ¶ 56,
without identifying **what** specific claim is anticipated or made obvious. Thus, USR
has failed to meet both the **where** and **what** requirements of *Exergen*. Consequently,
USR's pleading fails the *Exergen* standing and the Court should dismiss claim 3.

Further, "as to the '**why**' and '**how**' elements, the party alleging inequitable
conduct cannot just generally allege that the omitted information is material and not
cumulative … [but rather must] 'identify the particular claim limitations, or
combination of claim limitations that are supposedly absent form [*sic*] the
information of record in order to explain both 'why' the withheld information is
material and not cumulative, and 'how' an examiner would have used this
information in assessing the patentability of the claims." Mikulka (quoting *Exergen*,
575 F.3d at 1329-30, emphasis added). Once again, USR's truism that "the
examiner would not have allowed claims that were anticipated or made obvious,"
does not meet *Exergen's* requirements. It fails to identity **why** a particular reference
is material to any claim limitation. It also fails to allege for any particular claim
limitation "'**how**' the examiner would have used th[e] information in assessing the
patentability of the claims," or indeed, even whether a given claim was invalid for
anticipation or obviousness. Consequently, the Court should dismiss claim 3.

Finally, not only are the "specific who, what, when, where, and how of the
material misrepresentation or omission" not provided but there also are no
"underlying facts from which [this] court may reasonably infer that a party acted
with the requisite [bad intent]." *Exergen*, 575 F.3d at 1327. For this additional

5

reason, the Court should dismiss claim 3.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 2009 U.S. Dist. LEXIS 97852, *6-*7 (D. Del. Oct. 19, 2009) (under *Exergen*, the defendant made "insufficient allegations of underlying facts from which [the court] may reasonably infer … specific intent to deceive").

In addition to striking claim 3 for failing to plead inequitable conduct with particularity, the Court should also strike claim 1.  USR's antitrust claim is based on the same conduct that USR alleged in claim 3.  But an antitrust claim requires a "higher threshold showings of both intent and materiality than does a finding of inequitable conduct."  *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998).  Thus, to plead an anti-trust claim requires "identification of the particular references omitted as well as particularized allegations that 'but for' the omissions, the PTO would not have granted the patent." *Kaiser Found. v. Abbott Labs.*, 2009 U.S. Dist. LEXIS 107512, *15 (C.D. Cal. Oct. 8, 2009) (internal quotation omitted).  Assuming *arguendo* that USR's complaint met the lower pleading standard required under *Exergen* to plead inequitable conduct, it has not met the higher pleading standard required to properly plead an antitrust claim because there are **no** "particularized allegations that 'but for' the omissions, the PTO would not have granted the patent."  *Correct Craft IP Holdings v. Malibu Boats*, 2010 U.S. Dist. LEXIS 13577, *24 (M.D. Fla. Feb. 17, 2010) (dismissing a *Walker Process* claim, while allowing the underlying inequitable conduct claim).  Thus, the Court should dismiss claim 1.

The Court should also dismiss Claims 4-8 for failing to plead inequitable conduct with particularity because they are all based on the same improperly pled inequitable conduct.[3]  USR had to allege inequitable conduct to proceed with those

---

[3]  *See* Complaint, ¶¶ 99, 107 (ECORE violated the False Marking Statute and Lanham Act because, *inter alia*, "the '723 patent is invalid, unenforceable and fraudulently procured"); *id.* at ¶¶123, 132 (ECORE interfered with USR's prospective economic advantage because, *inter alia*, "the '723 patent is invalid, unenforceable and fraudulently procured"); *id.* at ¶135 (ECORE's alleged inequitable conduct is "prohibited by … § 17200, et seq.").

claims because a patentee always has the right "to make statements about potential infringement of its patent," unless those statements "have been undertaken in bad faith." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999) (holding that a plaintiff may only proceed with a Lanham Act claim for statements made by a patentee if those statements were made in bad faith). Thus, if "fraud is not necessarily an element of a claim …, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct, … [but] in that event, the claim … [must be pled with] particularity." *Kearns v. Ford Motor Corp.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal citations omitted) (affirming the dismissal of a 17200 claim because it was not pled with particularity). Because USR based its claims on inequitable conduct, it was required to plead that inequitable conduct with particularity. As it did not, the Court should dismiss claims 4-8.

In addition, for claim 4, USR had to plead ECORE's alleged bad faith with particularity because the "false marking statute is a fraud-based claim, which [must be pled with particularity]." *Juniper Networks v. Shipley*, 2009 U.S. Dist. LEXIS 40978, *11 (N.D. Cal. May 13, 2009); *cf. Inventorprise, Inc. v. Target Corp.*, 2009 U.S. Dist. LEXIS 102852 (N.D.N.Y Nov. 2, 2009) ("Section 292 is … a penal statute"). Similarly, for claims 5-8, USR had to plead ECORE acted in bad faith to avoid preemption by Federal law. *See ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489, 504 (D. Del. 2003) (to keep claims brought under the Lanham Act and California state law claims for interference with economic advantage and 17200 from being preempted by Federal law, requires proving that the patentee acted in bad faith). But when Lanham Act claims and state law claims are based on a patentee's bad faith, that bad faith must be pled with particularity. *See Noble Fiver Techs., LLC v. Argentum Med., LLC*, 2006 U.S. Dist. LEXIS 43357, *16-*17 (M.D. Pa. June 27, 2006) (dismissing Lanham Act and state law claims because plaintiff failed to plead with particularity that patentee acted in bad faith in enforcing its patents). Thus, the Court should dismiss claims 4-8 for this additional reason.

7

### III.   THE COURT SHOULD DISMISS CLAIMS 1 AND 3-8 FOR THE FOLLOWING ADDITIONAL REASONS

####    A.    The Court Should Dismiss Claim 1 (the Antitrust Claim)

#####        1.    The Court's Lack of Declaratory Judgment Jurisdiction also Means that It Lacks Jurisdiction to Hear the Antitrust Claim

The Court's lack of subject matter jurisdiction over claims 2 and 3 dooms claim 1. For the Court to have subject matter jurisdiction based on ECORE allegedly fraudulently obtaining its patent, ECORE had to attempt to enforce its patent against USR. The Federal Circuit has held that the standard necessary to prove such enforcement is that the plaintiff had a reasonable apprehension of suit. *Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350 (Fed. Cir. 2004), *rev'd on other grounds,* 546 U.S. 394 (2006). As discussed *supra*, USR never had a reasonable apprehension of suit. Therefore, once the Court dismisses the declaratory judgment claims, it should also dismiss this antitrust claim.[4] *See Cygnus Therapeutic Sys. V. ALZA Corp.,* 92 F.3d 1153, 1162 (Fed. Cir. 1996) ("[i]t is enough to simply point out that the same facts that compel the conclusion that [the plaintiff] failed to establish declaratory judgment jurisdiction for the district court also compel the conclusion that no reasonable fact finder could find that [the defendant] has acted to enforce [its] patent")."

USR's only basis for declaratory judgment jurisdiction (and by extension *Walker Process*[5] jurisdiction) is that ECORE "alert[ed Plaintiff] to the existence of the ['723] patent." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 318 (N.D. Cal. 2007). But that is not a sufficient basis for finding either declaratory judgment or *Walker Process* jurisdiction. "Merely notifying [Plaintiff] to the existence of the

---

[4]  The Federal Circuit has not decided whether the standard for bringing an antitrust claim based on the fraudulent procurement of a patent has changed post-*MedImmune*. But the Court does not need to decide that issue because, as discussed *supra*, the Court lacks subject matter jurisdiction whether the Court decides the declaratory judgment claims using the pre- or post- *Medimmune* standard.

[5]  Antitrust claims may be based on fraudulently procuring a patent. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 176 (1965).

patent, … would not meet the minimum standard for sustaining an action for declaratory judgment … [or] form the basis of a *Walker Process* claim." *Id.* Accordingly, the Court should dismiss the antitrust claim for this additional reason.

### 2.    USR Has Not Pled an Antitrust Injury

"In general, antitrust injury 'depends less on the plaintiff's proof than on the logic of its complaint and its theory of injury[,]' and is 'well-suited to prediscovery disposition.'" *McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, 2008 U.S. Dist. LEXIS 47428, *11 (D. Haw. June 16, 2008) (quoting Areeda & Hovenkamp, Antitrust Law, ¶ 337d (2007)).  Here, the "logic of Plaintiff's complaint and its theory of injury" demonstrate that it has not pled an antitrust injury.

To have standing to proceed with its antitrust claim, USR must plead facts to show that it has suffered the "type of [injury that] the antitrust laws were intended to prevent."  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 373 (9th Cir. 2003).  Antitrust injury requires harm to competition as manifested by higher prices and lower output.  *National Collegiate Athletic Ass'n v. Board of Regents*, 468 U.S. 85, 107 (1984).  Thus, "it is competition, ***not competitors***, which the Act protects." *Brown Shoe Co. v. United States*, 370 U.S. 294, 344 (1962) (emphasis added); *accord NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (stating  a claim requires harm "to the competitive process, i.e., to competition itself").

USR did not allege any facts demonstrating harm to competition.  The only harm that USR alleges is that "U.S. Rubber has sustained loss of profits and other damages," Complaint, ¶ 13, and "U.S. Rubber's attempts to compete in the market were hindered and delayed, resulting in damages including but not limited to lost profits."  *Id.* at ¶ 77.  But a "drop in Plaintiff's sales does not, by itself, establish that the reduction in sales was the result of a Sherman Act antitrust violation."  *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2008 U.S. Dist. LEXIS 68559, *29 (N.D. Cal. Mar. 11, 2008) (dismissing antitrust claim); *accord Eichman v. Fotomat Corp.*,

1  880 F.2d 149, 163 (9th Cir. 1989) ("a drop in gross sales does not establish anti-trust

2  injury … [unless] the reduction in sales is the result of an antitrust violation").

3  Although USR alleges that "consumers in the Relevant Market were injured,"

4  Complaint ¶ 13, there is absolutely no allegation, let alone any fact, to support such

5  an allegation, demonstrating how consumers were injured.  In particular, there are

6  no allegations that ECORE's products cost more, or that they have lowered output

7  or are of decreased quality.  *Concord v. Boston Edison Co.*, 915 F.2d 17, 21-22 (1st

8  Cir.  1990) ("a practice is 'anticompetitive' only if it harms … competition's basic

9  goals -- lower prices, better products, and more efficient production methods").

10  USR's allegations here are very similar to the allegations in *In re Rubber

11  Chems. Antitrust Litig.*, 2008 U.S. Dist. LEXIS 98393 (N.D. Cal. Dec. 4, 2008).

12  There, the plaintiff alleged that the defendant had "'coerced, through threats and

13  intimidation' some of [plaintiff's] 'actual and potential customers' … [such that

14  plaintiff] has 'lost sales,' has experienced a decline in its 'share of the [] market,'

15  and has 'suffered a loss of profits, loss of goodwill, and loss of ongoing concern

16  value.'"  *Id.* at *3.  The Court dismissed that claim because, like USR here, "[the

17  plaintiff] failed to allege an injury to 'competition,' as opposed to an injury to

18  [plaintiff]."  *Id.* at *4.  In addition, like here, the plaintiff in that case alleged that the

19  defendant "'caused injury to competition in the United States by reducing and

20  restraining the competition that [the plaintiff] afforded the [relevant] market."  *Id.*

21  That court held that "such [a] conclusory allegation is insufficient to allege injury to

22  competition."  *Id.*  So too here, USR has failed to state any facts supporting its

23  conclusory statement that "consumers were injured."  *See Twombly*, 550 U.S. at

24  570.  Thus, USR has failed to plead an antitrust injury and it lacks standing to bring

25  its antitrust claim.  The Court should dismiss claim 1.

26  **3.     The Complaint Fails to Plead Any Factual Basis for Its
         Conclusory Allegations Regarding the Relevant Market and
27         Market Power**

28  To state an antitrust claim, USR must plead sufficient facts to support its

10

allegations of 1) a relevant product market and either 2) "[p]ossession of monopoly power [by ECORE] in the relevant market," or "predatory or anticompetitive conduct [by ECORE] to accomplish the monopolization, [and] dangerous probability of success." *SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 n.2 (9th Cir. 1996). USR has failed to plead such facts.

### a.   The Complaint Fails to Provide a Factual Basis for Its Conclusory Allegations About the Relevant Market

The relevant product market consists of "commodities reasonably interchangeable by consumers for the same purposes." *See United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395 (1956). Consequently, a product market "must encompass the product at issue as well as all economic substitutes for the product." *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). Here, USR alleges: "The relevant product markets are (1) acoustical underlayment used for flooring, including but not limited to acoustical underlayment primarily made from rubber, as well as acoustical underlayment made from other materials, and (2) alternatively, acoustical underlayment made primarily from recycled tires." Complaint, ¶ 24. Thus, USR has made no mention of reasonably interchangeable products, nor any mention of "economic substitutes for the product." USR is merely stating conclusory allegations about the relevant market. But an "allegation that a product market exists must be, as with any element of a claim, supported by 'sufficient factual matter,', i.e., 'evidentiary facts.'" *Golden Gate Pharm. Servs. v. Pfizer, Inc.*, 2009 U.S. Dist. LEXIS 111862, *6-*7 (N.D. Cal. Dec. 2, 2009). As this claim contains no "evidentiary facts" supporting its definition of the relevant market, it should be dismissed. *See Twombly*, 550 U.S. at 570.

### b.   The Complaint Fails to Provide Any Factual Basis for Its Conclusory Allegations Regarding Market Power

The antitrust claim should also be dismissed because it is totally lacking in any facts supporting its claim that "ECORE has attempted to, and did, monopolize

the Relevant Market." Complaint, ¶ 30. To state a claim that ECORE monopolized the relevant market, USR had to allege sufficient facts to "show that [ECORE] owns a dominant share of [the relevant] market, and [] show that there are significant barriers to entry." *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). First, there is not even an allegation, let alone any fact, to support that allegation "that there are significant barriers to entry." Thus, because USR did not plead that element of its claim, the Court should dismiss this claim.

Second, there are ***no*** facts in the Complaint to support USR's allegation that ECORE "owns a dominant share of the market." The only factual statement made regarding ECORE's market share is that ECORE has provided "60 million square feet of its rubber underlayment." Complaint, ¶ 29. That statement is of no evidentiary value, however, because the complaint does not allege 1) whether that "rubber underlayment" is all or part of the relevant product market, and 2) whether those sales are in the United States (the relevant geographical market) or worldwide.

Moreover, there is ***no*** allegation regarding how big the rubber underlayment market is, so that statement provides no support that ECORE is dominant in that market. The only other mention of square feet in the complaint is for LEED certified projects. But the Complaint never identifies what LEED is. It appears from the context of the Complaint, however, that LEED is part of the relevant market. *See id.*, ¶¶ 16-20. Thus, the Complaint itself demonstrates that ECORE is ***not*** dominant in that market because the Complaint states that LEED projects "cover[] 1.062 ***billion*** square feet." *Id.* at ¶ 20 (emphasis added). Thus, the Complaint demonstrates that ECORE has ***less than 6% of part*** of the relevant market. Accordingly, the Complaint fails to state a claim for actual monopolization.

The Complaint also fails to state a claim for attempted monopolization. It pleads ***no*** facts that demonstrate that ECORE has "a dangerous probability of success" in achieving a monopoly in a relevant market. Indeed, the few facts pled demonstrate that ECORE does ***not*** have a high probability of success.

"The court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations." *Juniper Networks*, 2009 U.S. Dist. LEXIS 40978, *6 (*citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Here, USR alleges that numerous products all anticipate or make obvious the claims of the '723 patent. Complaint, ¶¶ 51, 56. Assuming *arguendo*, USR's allegations are correct, then ECORE has **no** probability of obtaining a monopoly. The products that USR mentions had to exist prior to 2001; otherwise they could not be prior art to the patent. Thus, if the patented invention is nothing new, ECORE's products must compete with all those other products for market share and it has no dangerous probability of achieving a monopoly. Thus, USR has failed to allege any facts that support its allegation that ECORE has a dangerous probability of monopolizing the relevant marker.

Once again, *Korea Kumho Petrochemical*, 2008 U.S. Dist. LEXIS 68559, is instructive. There, the plaintiff alleged: "Given [defendant's] dominance of the [relevant] market, there was a dangerous probability that it would by its unlawful actions achieve monopoly power in violation of Section 2 of the Sherman Act." *Id.* at *28. That court's holding dismissing the claim applies equally well to USR:

> This allegation consists merely of "'labels and conclusions, and a formulaic recitation of the elements of a cause of action' which 'will not do.'" *Twombly*, 127 S.Ct. at 1966. Although Plaintiff need not necessarily quantify [defendant's] market share with precision, Plaintiff must assert some facts in support of its assertions of market power that suggest those assertions are plausible. Plaintiff has not done so.

*Id.* at *28-*29. USR's antitrust claim suffers from the same deficiency, and the Court should dismiss this claim. *See Twombly*, 550 U.S. at 570.

**B.    The Court Should Dismiss Claim 4 (the False Marking Claim) Because USR Has Failed to Provide a Sufficient Factual Basis to Support Its Conclusory Allegations that ECORE Marked Its Products or that ECORE Intended to Deceive the Public**

USR's false marking allegation is that "ECORE has marked these advertisements and products with the '723 Patent number." Complaint, ¶ 99. But nowhere does USR point to even a single product that ECORE marked. Thus, the

13

Court should dismiss the false marking claim to the extent it is based on ECORE's allegedly marking its products.

In addition, the Court should dismiss this claim because, not only did USR fail to plead the underlying inequitable conduct with particularity, but it also failed to plead with particularity that ECORE acted with a specific intent to deceive the public. "The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)." *Juniper Networks*, 2009 U.S. Dist. LEXIS 40978, *11 (citing *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("[p]laintiffs must 'state with particularity facts giving rise to a strong inference' that defendants acted with the *intent to deceive*"). USR alleges that "ECORE has engaged in these actions for the purpose of deceiving the public." Complaint, ¶16. But USR has provided no facts to support its conclusory allegations that ECORE acted with a specific intent to deceive the public. Indeed, USR has failed to plead facts that meet even the notice pleading requirement, let alone the heightened pleading standard required by Rule 9. The Court should dismiss this claim. *See Twombly*, 550 U.S. at 570.

Finally, the Court should dismiss this claim because it does not cover ECORE's listing its own patents on its website. Although there are few reported cases that cover this exact issue, there is a Lanham Act case that is analogous, *IMCS, Inc. v. D.P. Tech. Corp.*, 264 F. Supp. 2d 193 (E.D. Pa. 2003). In *IMCS*, a party brought a Lanham Act claim based on the patentee's advertising that its product was protected by a patent, despite the patentee's knowledge that the patent was fraudulently procured. *Id.* at 195. The *IMCS* court dismissed the Lanham Act claim because "[e]ven if a patent was obtained through fraud … until such a determination of invalidity is made [by a court]," a defendant is free to advertise that its products are covered by the patent. *Id.* at 197. The same rationale applies here. Thus, because a plaintiff fails to state a claim for a Lanham Act violation for false advertising based on advertising that defendants' products were covered by a falsely

14

1    procured patent, a plaintiff also fails to state a claim for false marking based on

2    alleged false advertising that defendants' products are covered by a patent.  *See also*

3    *Advanced Magnetic Closure, Inc. v. Rome Fastener Corp.*, 2005 U.S. Dist. LEXIS

4    10016, *32 (S.D.N.Y. May 11, 2005) (denying leave to amend because "an assertion

5    that a patent was procured through inequitable conduct does not state a cause of

6    action for false advertising under the Lanham Act").  Thus, unless and until a court

7    finds that the '723 patent is invalid, it is not a violation of the false marking statute

8    for ECORE to advertise that its products are covered by the '723 patent, assuming

9    *arguendo* it engages in such advertising.  Therefore, the Court should dismiss this

10   claim.

11         C.    **The Court Should Dismiss Claim 5 Because 1) USR's Allegation**
                 **that ECORE Listed Its Product as Being Covered by the Patent-at-**
12               **Issue Is Not Actionable Under the Lanham Act, and 2) USR Has**
                 **Failed to Provide a Factual Basis to Support Its Conclusory**
13               **Allegations that the Alleged False Statements Were Material**

14         USR's allegation regarding this claim is the fact that ECORE advertised on its

15   web site that ECORE's products were covered by the patent-at-issue.  Complaint, ¶¶

16   106, 111.  Its claim should be dismissed for two reasons.

17         First, USR's allegation that ECORE listed its product as being covered by the

18   patent-at-issue is not actionable under the Lanham Act.  The Federal Circuit has

19   held that the Lanham Act is not the proper remedy for inequitable conduct

20   committed during the prosecution of a patent.  Instead, "[t]he established remedy for

21   inequitable conduct is unenforceability of the patent … [declaring a] case …

22   exceptional … [and] § 2 of the Sherman Act provided the other elements necessary

23   to a § 2 case are present."  *Pro-Mold v. Great Lakes Plastics*, 75 F.3d 1568, 1575

24   (Fed. Cir. 1996).  Thus, several courts have followed *Pro-Mold* and explicitly

25   rejected USR's argument that listing a defendant's product as being covered by an

26   allegedly fraudulently procured patent states a claim under the Lanham Act.  For

27   example, as discussed in the previous section, *IMCS* explicitly rejected the argument

28   that USR makes here.  *IMCS* dismissed the Lanham Act claim because "[e]ven if a

15

1  patent was obtained through fraud … until such a determination of invalidity is

2  made [by a court]," a defendant is free to advertise that its products are covered by

3  the patent. *IMCS*, 264 F.Supp. 2d at 197.  As another example, in *Advanced*

4  *Magnetic Closure,* 2005 U.S. Dist. LEXIS 10016, the court did not allow a plaintiff

5  to proceed with a Lanham Act claim based on the exact same allegations that USR

6  has made here.  The plaintiff in that case brought a Lanham Act claim based on its

7  allegation that the inventor committed inequitable conduct before the PTO and "that

8  despite defendants' knowledge of the invalidity of the patent, they continued to

9  advertise that their product was patented." *Id.* at *30.  The court did not allow the

10  plaintiff to amend its complaint because "an assertion that a patent was procured

11  through inequitable conduct does not state a cause of action for false advertising

12  under the Lanham Act." *Id.* at *32.  The Court should follow *IMCS* and *Advanced*

13  *Magnetic Closure* and dismiss this claim.

14        Second, to state a claim for a Lanham Act violation, USR must plead facts to

15  support its allegations that the alleged false statements were both material and that it

16  was harmed by those false statements.[6]  *Jarrow Formulas, Inc. v. Nutrition Now,*

17  *Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2002).  USR has provided no facts to support

18  its conclusory allegation that the alleged statements on ECORE's website were

19  material to any purchaser's decision to buy ECORE's products.  USR alleges,

20  however, that these statements must have been material because of "the market

21  power that ECORE was able to obtain in the Relevant Market."  Complaint, ¶ 110.

22  But as discussed *supra*, USR has failed to plead any facts to support its allegation

23  that ECORE has "market power" and to support its allegations regarding the

24  relevant market.  Moreover, assuming *arguendo* that USR had properly pled the

25  relevant market and ECORE's market power, there are ***absolutely no facts*** or even

---

[6] Moreover, assuming *arguendo* that this claim was not based on ECORE's alleged inequitable conduct, "[t]he Ninth Circuit [still requires] a party to plead a claim under the Lanham Act with some particularity." *Teragren, LLC v. Smith & Fong Co.*, 2008 U.S. Dist. LEXIS 36968, *9 (W.D. Wash. Mar. 17, 2008)**.**

allegations, that ECORE's market power is based on the fact that it has a web site. Thus, USR has provided no factual support that these alleged false statements are material, and the Court should dismiss this claim.

In addition, USR has not alleged that ECORE made any false statements about USR's products; therefore USR has failed to allege any facts to support its conclusory allegation that it was harmed by ECORE's alleged false statement. Thus, for this second reason, the Court should dismiss this claim. *See Applera Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 163 (D. Mass. 2009) (dismissing Lanham Act claim based on alleged inequitable conduct committed by patentee because complaint failed to allege facts showing "that the deception is material in that it is likely to influence purchasing decisions; … [and] that the statement results in actual or probable injury to the plaintiffs").

**D.   The Court Should Dismiss Claims 6 and 7 (Interference with Business Relationships Claims) Because USR Has Failed to Plead a Sufficient Factual Basis to Support Its Conclusory Allegations that ECORE Knew of USR's Alleged Business Relationships**

One of the necessary elements that must be pled to properly state a claim for interference with business relations is that the defendant knew of the business relationship. *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 831 (9th Cir. 2001). USR merely makes the conclusory allegation that "ECORE was at all relevant times aware of the prospective economic relationships between USR and USR's Business Partners." Complaint, ¶ 118. But USR's statement is nothing more than a "label[] and conclusion[]." *Twombly*, 550 U.S. at 555.

USR alleges that its "Business Partners" include Tri-West, Ltd, Johnsonite, Inc., and Kinetics Noise Control, Inc. Complaint, at ¶ 116. USR alleges that Tri-West lost bids allegedly due to ECORE's patent. *Id.* at ¶ 120. But there are no facts, nor even a specific allegation, that ECORE knew of an alleged business relationship between USR and Tri-West. Similarly, USR provided no facts nor even an allegation that ECORE was aware of any relationship between Johnsonite and

17

USR, or between Kinetics Noise Control and USR.  *Id.* at ¶¶ 120-21.  This lack of specific allegations, let alone ***facts*** to support its general conclusory allegation that ECORE was aware of USR's alleged business relationships is fatal to USR's claims for interference with existing business relations.  Thus, the Court should dismiss claims 6 and 7 for failure to state a claim.  *See Twombly*, 550 U.S. at 570.

In addition, Claim 7 is preempted by Federal law.  The Federal Circuit has made clear that a plaintiff can not bring state law claims based on conduct related to enforcing a patent unless the plaintiff alleges that enforcement was brought in bad faith.  *See Zenith*, 182 F.3d at 1353.  Thus, claim 7, which is a claim for negligent interference with prospective economic advantage, is preempted by federal patent law because it does not require that the patentee interfered in bad faith.

Assuming *arguendo* that the Court finds that USR has stated a claim for relief for one or both of these claims, it should still choose not to exercise jurisdiction over these claims if it dismisses claims 1-5 (the federal question claims).  *See* 28 U.S.C. § 1367(c) (a court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction").  "Because this action is in its incipiency and only state law issues [would] remain, the court [should] find[] that based on the factors listed above it should decline to exercise jurisdiction over Plaintiff's state law claims."  *McCabe*, 2008 U.S. Dist. LEXIS 47428 at *30.

**E.   Because USR Has Not Stated a Claim for Restitution, the Court Should Dismiss Claim 8 and Should Strike Its Request for Damages and Should Also Strike Its Request for Attorney's Fees Because USR Is Not Acting as a Private Attorney General**

The only monetary relief available under Section 17200 is restitution, *i.e.*, the restoration of "the status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-52 (2003).  But the Complaint, while requesting restitution, Complaint at p. 25, does not allege, let alone supply any facts, that USR has paid any money to

ECORE.  To the contrary, accepting *arguendo* USR's allegations, ECORE would have received money only from its customers, not from USR.  Thus, the Court should strike USR's request for restitution on its Section 17200 claim.[7]

Further, the fact that USR does not have a claim for restitution deprives it of standing to seek injunctive relief under Section 17200.  *See Citizens of Humanity, LLC v. Costco Wholesale Corp.*, 171 Cal. App. 4th 1, 22 (2009); *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 817-18 (2007); *see also Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422, at *2-*3 (C.D. Cal. Dec. 21, 2009).  Thus, the Court should dismiss this claim under both Rule 12(b)(1) and Rule 12(b)(6).

Even if the Court does not dismiss this claim in its entirety, it should still strike USR's request for attorney's fees.  USR alleges a statutory right to attorney's fees under California's private attorney general statute.  Cal. Civ. Proc. Code § 1021.5.  *See* Complaint at p. 25.  But USR's request is improper because the Complaint demonstrates that the primary effect of this lawsuit is to advance USR's pecuniary interests and that USR's claimed damages give it sufficient financial incentive to bring the lawsuit.

Section 1021.5 "provides that a court may award attorneys' fees to a successful party in a 'private attorney general' action … if [] the necessity and cost to plaintiff in bringing its private enforcement action outweighs its stake in the action."  *Advanced Micro Devices, Inc. v. National Semiconductor Corp.*, 38 F. Supp. 2d 802, 815 (N.D. Cal. 1999).  But "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest."  *Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000) (internal quotation omitted).  "Therefore, where the primary

---

[7]  Under Fed. R. Civ. P. 12(f), a party may move to strike any "immaterial … matter," *id.*, including "parts of the prayer for relief when the relief sought is not recoverable as a matter of law."  *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1208 (C.D. Cal. 2008) (internal quotation omitted).

effect of a lawsuit is to advance or vindicate a plaintiff's personal economic interests, an award of fees under § 1021.5 is improper." *Advanced Micro Devices, Inc.*, 38 F. Supp. 2d at 815 (internal citation omitted); *accord Kaufman & Broad-South Bay v. Unisys Corp.*, 822 F. Supp. 1468, 1478 (N.D. Cal. 1993) ("a plaintiff may not recover fees under section 1021.5 if its suit is primarily motivated by its own pecuniary interests, even if an incidental public benefit derives from the suit"). The Court should therefore strike USR's allegations seeking attorney's fees under Section 1021.5.

Finally, the Court should dismiss this claim if it dismisses the antitrust claim. California courts "have held that '[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason," dismissal of the antitrust claim requires dismissal of the 17200 claim.[8] *See Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims.

DATED:  March 8, 2010                          Respectfully submitted,

OBLON, SPIVAK, McCLELLAND,
  MAIER & NEUSTADT, LLP

LUCE, FORWARD, HAMILTON &
  SCRIPPS LLP


By:  ___/s/ Jeffrey D. Wexler____
     Jeffrey D. Wexler
     Attorneys for Defendant ECORE
     International Inc.

201050376.1

---

[8] Alternatively, for the reasons stated above, the Court should decline to exercise supplemental jurisdiction over this claim if it dismisses claims 1-5.