UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  \_\_\_\_\_
Send      \_\_\_\_\_
Enter     \_\_\_\_\_
Closed    \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

**CASE NO.:** CV 09-09516 SJO (OPx)     **DATE:** April 11, 2011

**TITLE:** U.S. Rubber Recycling, Inc. v. ECORE International Inc., et al.

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                 Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIM ONE** [Docket No. 56]

This matter is before the Court on Defendant ECORE International, Inc.'s ("Defendant") Motion to Dismiss ("Motion"), which was filed on December 27, 2010. (Docket No. 56.) Defendant also filed a Request for Judicial Notice ("RJN"). (Docket No. 57.) U.S. Rubber Recycling, Inc. ("Plaintiff") submitted an Opposition ("Opposition") on January 3, 2011. (Docket No. 60.) Defendant responded with a Reply ("Reply") on January 5, 2011. (Docket No. 61.) Defendant filed a Notice of Decision ("Notice") on March 21, 2011. (Docket No. 70.) Plaintiff filed a Response to Notice of Decision ("Response") on March 25, 2011. (Docket No. 75.) The Court found this matter suitable for disposition without oral argument and vacated the hearing set for January 24, 2011. *See* Fed. R. Civ. P. 78 (b). For the following reasons, Defendant's Motion is GRANTED.

I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff and Defendant are manufacturers and sellers of flooring products, including rubber acoustical underlayment products. (Compl. ¶¶ 27, 28.) Acoustical underlayment products are flat, resilient substrates used under floors to dampen sound. (*Id.* ¶ 14.) Rubber acoustical underlayment is made from recycled automobile tires and provides greater sound dampening characteristics than underlayment made from other materials. (*Id.* ¶¶ 15, 16.) Rubber acoustical underlayment also provides points for Leadership in Energy and Environmental Design ("LEED") certification, which has become the recognized standard for measuring environmentally sustainable construction in the United States. (*Id.* ¶¶ 16, 18.) Obtaining LEED certification allows participants to take advantage of government initiatives available for green projects and to compete in the rapidly growing "green build market." (*Id.* ¶ 19.) The demand for sustainable construction has created a corresponding demand for acoustical flooring underlayment made of recycled materials. (*Id.* ¶ 22.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 09-09516 SJO (OPx)</u>     DATE: <u>April 11, 2011</u>

On December 29, 2009, Plaintiff filed its Complaint against Defendant, alleging that Defendant fraudulently procured and wrongfully enforced U.S. Patent Number 6,920,723 (the "'723 Patent") to monopolize the rubber acoustical underlayment market. (Compl. ¶¶ 3, 30, 35.) The '723 Patent purportedly provides a substrate that minimizes bulk while still providing insulating material with the requisite acoustic properties and strength characteristics needed in a flooring system. (*See id.* ¶ 36.) Plaintiff asserted that, during the prosecution of the '723 Patent, Defendant intentionally failed to disclose to the United States Patent and Trademark Office ("PTO") material prior art that showed the claimed invention had been sold in the United States and described in printed publications more than one year prior to the '723 Patent application. (*Id.* ¶¶ 35, 52.) Plaintiff also alleged that Defendant threatened litigation to competitors, distributors, architects, and end-users from at least 2006 to 2009 and communicated to them that they may not sell or purchase rubber acoustic underlayment from anyone but Defendant due to the '723 Patent. (*Id.* ¶ 65.) Plaintiff posited that these threats were baseless, made in bad faith, and for anti-competitive purposes. (*Id.* ¶¶ 66, 67.)

In its Complaint, Plaintiff asserted eight claims for relief: (1) violation of § 2 of the Sherman Antitrust Act; (2) declaratory judgment of invalidity of the '723 Patent; (3) declaratory judgment of unenforceability of the '723 Patent; (4) false patent marking; (5) violation of § 43(a) of the Lanham Act; (6) intentional interference with prospective economic advantage under California common law; (7) negligent interference with prospective economic advantage under California common law; and (8) unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* (commonly known as the Unfair Competition Law ("UCL")). (*See generally* Compl.)

On March 8, 2010, Defendant filed a Motion to Dismiss under Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim, respectively. (Docket No. 15.) On July 28, 2010, the Court dismissed Claim Eight but denied dismissal of Claims One through Seven. (Docket No. 27.) On August 16, 2010, Defendant filed a Motion to Reconsider, which the Court granted. The Court, however, did not dismiss Claim One. (Docket Nos. 29, 62.) On November 23, 2010, the PTO issued United States Reissue Patent No. RE41945. (RJN Ex. 1.) On December 27, 2010, Defendant filed the instant Motion to Dismiss Claim One under Rule 12(c). (Docket No. 56.)

II.     DISCUSSION

    A.     <u>Legal Standard</u>

        1.     <u>Judgment on the Pleadings Rule 12(c)</u>

Under Rule12(c), a motion for judgment on the pleadings is appropriate at a time "[a]fter the pleadings are closed but early enough not to delay trial." Fed. R. Civ. P. 12(c). Raising a "Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:   CV 09-09516 SJO (OPx)          DATE:   April 11, 2011

*Westlands Water Dist. v. U.S. Dept. of Interior, Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992).  The legal standards applied to Rule 12(c) and Rule 12(b)(6) are identical. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

In applying the Rule 12(b)(6) standard, a court must accept as true the allegations of the complaint in question.  *Hosp. Bldg. Co. v. Trs. of the Rex Hosp.*, 425 U.S. 738, 740 (1976).  The Court is required to construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Ultimately, "it is only the extraordinary case in which dismissal is proper" under Rule 12(b)(6).  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Unless a Rule 12(b)(6) motion is converted into a motion for summary judgment, "a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials)."  *Lanzillo v. City of Riverside*, No. CV 10-3409, 2010 WL 3171064, at *2 (C.D. Cal. Aug. 6, 2010) (citing *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)).  A court may, however, "take judicial notice of matters of public record."  *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations omitted).

       2.    *Walker Process* Claim

To strip a patentee of its exemption from the antitrust laws, the Supreme Court set forth a test in *Walker Process Equipment, Inc. v. Food Machine & Chemical Corp.*, 382 U.S. 172 (1965).  The elements of a *Walker Process* claim are well-settled.  A plaintiff is required to prove: (1) "the asserted patent was acquired by means of either a fraudulent misrepresentation or a fraudulent omission" before the PTO; (2) the party enforcing the patent "must also have been aware of the fraud when bringing suit"; (3) "independent and clear evidence of deceptive intent"; (4) "a clear showing of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission"; and (5) "the necessary additional elements of [an underlying] violation of the antitrust laws."  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068-71 (Fed. Cir. 1998) (internal quotations omitted) (citing *Walker Process*, 382 U.S. at 177, 178).

      B.    Plaintiff Cannot Plausibly Plead the Fourth Element in Its *Walker Process* Claim.

Defendant challenges the legal sufficiency of Plaintiff's *Walker Process* claim.  (Def.'s Mot. 1:3-4.) Defendant alleges that "the PTO's re-issuance of the patent precludes Plaintiff from plausibly pleading the necessary 'but for' causation element."  (*Id.* at 2:19-20.)  Defendant clarifies that it is not alleging that "[Plaintiff] did not **plead** 'but for' causation, but rather [Plaintiff] can now not

CASE NO.:   CV 09-09516 SJO (OPx)          DATE:   April 11, 2011

*plausibly plead* 'but for' causation." (Def.'s Reply 2:18-20.) Both Plaintiff's and Defendant's cited cases are not directly on point; they do not relate to the effects, if any, that a re-issuance may have on a pending *Walker Process* claim. Independently, the Court is unable to find Supreme Court or Federal Circuit precedent establishing whether a re-issuance may cure an alleged *Walker Process* violation.

For legal guidance, the Court looks to, and analogizes from, opinions regarding inequitable conduct and whether re-issuance cures fraud. As Plaintiff points out in its Opposition, the Federal Circuit has held that procurement of a patent through inequitable conduct cannot be remedied through disclosure in a subsequent re-issuance. *Hoffman-La Roche, Inc. v. Lemmon Co.*, 906 F.2d 684, 688-89 (Fed. Cir. 1990) ("[I]f the district court finds that there was inequitable conduct in the prosecution of the original patent then the reissue patent is invalid . . . ."); *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 525 F.3d 1334,1341 n.6 (Fed. Cir. 2008) ("[A] reissue proceeding cannot rehabilitate a patent held to be unenforceable due to inequitable conduct.").

Because Federal Circuit precedent establishes that a re-issuance does not cure fraud, it would seem reasonable to conclude that a re-issuance similarly does not cure a *Walker Process* violation. After all, the Federal Circuit has "consistently explained that *Walker Process* fraud is a variant of common law fraud." *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1349 (Fed. Cir. 2007). Nevertheless, where neither the Supreme Court nor the Federal Circuit has done so, the Court is disinclined to expand patent law in such a manner. Moreover, such a standard is not completely applicable to the instant case.

A claim of inequitable conduct lacks one vital element of a *Walker Process* claim. In a *Walker Process* claim, the plaintiff must prove "a clear showing of reliance, *i.e.,* that the patent would not have issued *but for* the misrepresentation or omission." *Nobelpharma AB*, 141 F.3d at 1071 (emphasis added). Inequitable conduct requires no such proof.[1] The instant Motion is centered on that key distinction: whether or not Plaintiff can still sufficiently plead "but for" causation after the re-issuance of RE41945. Because "but for" causation is not a shared element, the case law relating to inequitable conduct falls short of being persuasive. Thus, the Court must turn to other authorities that may illustrate whether a re-issuance prevents Plaintiff from further pursuing Claim One.

---

[1] "To establish inequitable conduct due to the failure to disclose material information . . . the party raising the issue must prove by clear and convincing evidence that[:] (1) the information is material; (2) the knowledge of this information and its materiality is chargeable to the patent applicant; and (3) the applicant's submission of false information or its failure to disclose this information resulted from an intent to mislead the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 719 F. Supp. 2d 388, 400 (D. Del. 2010) (citing *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1342-43 (Fed. Cir. 2005)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 09-09516 SJO (OPx)             DATE: April 11, 2011

The Manual of Patent Examining Procedure ("MPEP") "is primarily a set of instructions to the examining corps of the Patent Office from the Commissioner.  It governs the details of PTO examination, is made available to the public, and describes procedures on which the public can rely."  *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 486 (Fed. Cir. 1985).  The MPEP "[is] not binding on this court, but may be given judicial notice to the extent they do not conflict with the statute." *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002).  The MPEP states that "[a] reissue application will be examined in the same manner as a non-reissue, non-provisional application, and will be subject to all the requirements of the rules related to non-reissue applications."  MPEP § 1440 (8th ed. 2010); *see also* 37 C.F.R. §1.176(a).  In other words, the PTO fully examines a re-issuance as if it were presented for the first time.  *See Nupla Corp. v. IXL Mfg. Co.*, 114 F.3d 191 (Fed. Cir. 1997); *see also* (Pl.'s Resp. 2:14-16 (stating that "the reissue process is an entirely new application process based on the *scope* of claims, which was the basis of Defendant's reissue application").)  Here, Defendant submitted its re-issuance application with the allegedly invalidating prior art.  (*See* RJN Exs. 2-8.)  Even with the contentious prior art, the PTO issued RE41945 to Defendant, and did so after reviewing the patent as if for the first time.  (RJN Ex. 1.)  The re-issuance does not cure the alleged fraud, but it is dispositive of whether the PTO would have issued the original '723 Patent.

Moreover, in *Old Reliable Wholesale, Inc. v. Cornell Corp.*, ___F.3d___, No. 2010-1247, 2011 WL 891560, *27 (Fed. Cir. Mar. 16, 2011), the Federal Circuit found "probative" a PTO's re-issuance that confirmed the validity of a patent despite allegedly invalidating prior art.  The issue in *Old Reliable Wholesale* was whether a plaintiff had reasonable basis for asserting that its patent was not anticipated.  *Id.*  In this instance, the Court is not engaged in the more difficult determination of RE41945's validity, where "[it] is not bound by the PTO's actions and must make its own independent determination of patent validity."  *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005).  Rather, the Court is confronted with the question of whether the PTO would have issued the patent in the first place had the PTO been aware of the prior art.  As in *Old Reliable Wholesale*, the re-issuance of RE41945 is probative.[2]  Because the PTO reexamines re-issuance applications as if being presented for the first time, the fact that the PTO *did* re-issue Defendant's patent even *with* the prior art precludes Plaintiff from plausibly pleading Claim One.

---

[2] Plaintiff's attempt at differentiating the *ex parte* reexamination in *Old Reliable Wholesale* with a reissue process is unavailing.  (Pl.'s Resp. to Notice 2:14.)  Federal Circuit case law makes no such distinction.  *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("The Examiner's decision, on an original or reissue application, is never binding on the court.  It is, however, evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence."); *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985) (recognizing that re-issuance "strengthens" evidence concerning validity).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:  CV 09-09516 SJO (OPx)                DATE:  April 11, 2011

As a counter, Plaintiff argues that Defendant "engaged in a 'data dump' of 92 depositions, court orders, exhibits and other documents to the PTO" thus obscuring the alleged fraud during its re-issuance process.  (Pl.'s Opp'n 5:6-12.)  The Court finds that "although the PTO may not have considered all the deposition testimony [and court filings] . . . the fact remains that the PTO assessed . . . prior art references, and yet confirmed the validity of all claims of the [patent] over the prior art." *Old Reliable Wholesale*, 2011 WL 891560, at *26.  Furthermore, Plaintiff "bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007).  Plaintiff provides no evidence that the PTO did not properly review the allegedly invalidating prior art during the reexamination.  Thus, Plaintiff's argument that the alleged "data dump" misled the PTO fails.

As such, Plaintiff can no longer adequately plead the "but for" element because Plaintiff cannot make a clear showing that the PTO would not have issued the '723 Patent had the PTO known about the alleged prior art.  Accordingly, Plaintiff's *Walker Process* claim is DISMISSED.

III.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings as to Claim One is **GRANTED**.

IT IS SO ORDERED.